Julian S. Eaton v. Commissioner. Ethelwynn W. Eaton v. Commissioner.
Eaton v. Commissioner
Docket Nos. 109595 and 109596.
United States Tax Court
1943 Tax Ct. Memo LEXIS 121; 2 T.C.M. (CCH) 770; T.C.M. (RIA) 43416; September 10, 1943
*121 Walter E. Travers, Esq., 812 Harvey Bldg., West Palm Beach, Fla., for the petitioner. F. L. Van Haaften, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings, duly consolidated, involve the redetermination of a deficiency in income tax for the year 1937 in the amount of $2,930.99. The sole issue is whether the Commissioner erred in disallowing a deduction of $27,770.00 claimed on the petitioner's joint return on account of the alleged worthlessness of certain stock. Findings of Fact The petitioners are husband and wife residing in Miami, Florida. They filed their joint income tax return for 1937 with the collector for the district of Florida. Except where otherwise indicated, Ethelwynn W. Eaton is referred to hereinafter as the petitioner. James T. Wyman, the petitioner's father, died June 3, 1918, a resident of Hennepin County, Minnesota, leaving a will executed on December 27, 1916, by which he devised three-fifths of his residuary estate to trustees for the equal use and benefit of the petitioner and her two sisters. The trust was to continue until the expiration of twenty years from the date of execution of the will, at *122 which time the principal thereof was to be paid over to the three daughters in equal shares, the issue of any daughter then deceased to take the parent's share. The executors filed their final account in May, 1919, and pursuant to decree of distribution made July 2, 1919, transferred to the corporate trustee named in the will certain personal property in their hands of the appraised value of $96,284.18. Included in the transfer were 830 shares of $100 par value capital stock of Smith & Wyman Co., a Minnesota corporation. The executors appraised the stock, and reported the same for state inheritance tax purposes at par. At the date of the death of James T. Wyman the stock had a fair market value of $100 a share. After receiving distribution on July 2, 1919, the trustees attempted to dispose of the stock comprising the major part of trust corpus, but no sales were ever made. The last effort to sell was made at some time prior to the year 1932. In some of the years from 1920 to 1929, the trustees received cash dividends on the stock held by them. The last such dividend payment in 1929 was at the rate of $2.00 a share, the trustees receiving $1,660. The term of the trust having expired *123 on December 27, 1936, the trustees filed their final account, bearing that date, with the District Court of the Fourth Judicial District, for Hennepin County, Minnesota, on December 30, 1936. In January, 1937 the Court granted an order to show cause why the account should not be allowed, returnable February 11, 1937. Thereafter the account was allowed and in 1937 the trustees distributed to the petitioner 276 2/3 shares of stock of Smith & Wyman Co. having the aggregate par value of $27,666.66. The trustees had received and carried the stock at its appraised value, and they accounted for it at the same value at the time of final distribution to the petitioner. That treatment was in accordance with the general practice followed in the Probate Court and District Court having jurisdiction over the estate and the trust. Smith & Wyman Co. was incorporated under the laws of Minnesota in 1908, and thereafter engaged in the manufacture and sale of lumber and millwork. During the early years of its existence, it had been a profitable business. By the close of the year 1932, however, it had an accumulated surplus deficit of approximately $110,000. During the last half of 1932 it sustained *124 an operating loss on sales of manufactured merchandise which it estimated at $8,500. In or prior to 1933 it ceased active business operations and was thereafter engaged only in efforts to liquidate its property. At the close of 1933, it was indebted to Northwestern National Bank in the amount of $51,200, representing the balance of indebtedness owing on account of loans. On December 1, 1933, the debtor executed a note in favor of the bank secured by a mortgage on its real estate, plant and equipment, and inventory. The note and mortgage by their terms matured on December 1, 1936. In January, 1934, the bank purchased certain real estate from Smith & Wyman Co. for $15,500, and applied the proceeds of sale in reduction of the note indebtedness. Payments in cash were made in 1934 in the amount of $310, in 1935 in the amount of $250, and in 1936 in the amount of $1,524.71. One additional payment in the amount of $60.30 was made during January, 1937. All of the foregoing payments were applied in reduction of the principal debt, leaving the unpaid balance at approximately $33,650 at the close of 1936. The note and mortgage bore interest at the rate of 5 per cent per annum, but no payments *125 of interest were made subsequent to October, 1934. At the close of 1936 unpaid taxes assessed against the real estate covered by the mortgage amounted to $13,606.52. On February 10, 1936, Smith & Wyman Co. filed income and excess profits tax returns for the years 1934 and 1935 with the Collector of Internal Revenue for the District of Minnesota. No income was reported on either return. Under the heading "gross income" the following statement was written across the face of each: "Taxpayer inactive. Only income from miscellaneous sales of assets - tax liability only expenses. These exceeded the income." Capital stock tax returns for the years ended June 30, 1934 and June 30, 1935, filed with the same collector, reported the declared value and the adjusted declared value, respectively, of the entire capital stock as none. No income or excess profits tax returns were filed for either 1936 or 1937. During 1936, Guy Wyman, the managing officer of Smith & Wyman Co., was still hopeful that the business might be revived, and something be salvaged for stockholders. However, in that year the bank entered into negotiations with Wyman for the acquisition of the company's assets. In May, 1937, *126 under threat of foreclosure, the company transferred all its assets to the bank which accepted the same in full satisfaction of the indebtedness. In addition to the real estate the transfer included the debtor's inventory of sash and door manufacturing equipment, and its notes and accounts receivable. The bank leased part of the real estate during 1938, 1939 and part of 1940, receiving rentals in those years of $250, $900, and $680, respectively. It sold the real estate in 1940 for the net amount of $4,368.46. The personal property was sold for $4,122.51, and a total of $430.03 was collected on the accounts receivable. Expenses incurred by the bank in connection with the assets transferred to it amounted to about $4,000, exclusive of taxes. The real estate transferred to the bank consisted of a full city block in the industrial district of Minneapolis, Minnesota, and of other lots in blocks adjoining. Part of the property abuts the right-of-way of the Great Northern Railway Co., and a siding of the Northern Pacific Railway Co. extends to another part. The principal block was improved with three three-story brick and sheet iron factory or mill buildings, two two-story buildings, other *127 smaller buildings such as garages and sheds, and an engine house. All of the buildings were in good state of repair. The lots in the adjoining blocks were unimproved. The entire property was valued by the Minneapolis City Assessor in November, 1935, at $84,790. The appraiser who determined that value had been in the city's employ in that capacity since May 15, 1933. Since shortly after that time he had been continuously engaged in the appraisal of industrial real estate in the city. That figure represented the assessor's appraisal of the fair value of the land plus the estimated cost of replacement of the buildings less an allowance for depreciation. In 1936 and 1937 there were no sales of comparable industrial property in the city. During both of those years the value of the assets in question was less than the indebtedness of Smith & Wyman Co. On their joint income tax return for 1937 the petitioners deducted $27,770 on account of the claimed worthlessness of Smith & Wyman Co. stock. The respondent determined that worthlessness had occurred prior to the taxable year and disallowed the deduction. Other adjustments to reported net income are not in issue. Opinion The single issue *128 here presented is whether the 276 2/3 shares of Smith & Wyman Co. stock distributed to the petitioner Ethelwynn W. Eaton by the trustees under her father's will became worthless in 1937. The respondent has determined that worthlessness occurred in some prior year, and the burden of disproving the correctness of the determination is that of the petitioners. For the purpose of meeting it they have attempted to prove that the value of the real estate and the manufacturing equipment owned by the company exceeded the amount of the indebtedness which the property was mortgaged to secure. At the outset it may be said that the evidence does not establish that the mortgage debt constituted the company's only liability. Clearly the existence of others would directly affect the value of its stock. The absence of proof in that regard might well justify a decision in respondent's favor. However, we prefer not to rest our decision upon that narrow ground, particularly in view of the apparent assumption by both parties that the question at issue depends upon whether or not the value of the company's assets exceeded those obligations which the evidence does show to have existed. No evidence was *129 offered of market value of the stock itself. At the close of 1936 the principal balance remaining due on the note was about $33,650; unpaid interest for the preceding period of some 26 months would exceed $3,600. In addition, real estate taxes of $13,606.52 were unpaid. Even if these constituted the only liabilities, the assets of the company would have to have been worth in excess of $50,000 to leave an equity for stockholders. We do not think that any such value is established by the evidence. The petitioners introduced testimony of three witnesses on the question of value. One, an insurance engineer, testified only to the "sound" value of the buildings and manufacturing equipment, which he stated to be the cost of replacement less a reasonable allowance for depreciation. On cross-examination he stated that his appraisal gave no consideration to sales or market value. Another witness testified only as to the value of the land. He stated that if a buyer could be found who could make use of the land, two of the lots would be worth $5,000 each to him, and the remaining lots, of which there were fifteen and a fraction, $3,000 each. That testimony was preceded, however, with the statement, *130 "Well, I should say there was no market," and on cross-examination he testified that in his opinion the land had no speculative value nor market value at the time in question. The third witness was the appraiser from the city tax assessor's office who had valued the land and buildings in November, 1935, for property tax purposes. He testified that his opinion of a value of $84,790 for the land and buildings was an opinion of their full and fair value; that in arriving at full and fair value he took into consideration estimated replacement cost less depreciation and also any sales of similar property; but that in this instance he could not recall whether any sales of similar property had been made. His testimony did not place separate values on the land and on the buildings. Replacement cost less depreciation may be a factor to be considered in determining market value but clearly can not, alone, establish it. The testimony of the one witness who did place a market value on the land was rendered ambiguous and inconclusive by his prefatory remark and by his statement on cross-examination that there was no market value. There is nothing to indicate of what the personal property and equipment *131 consisted, nor the amount nor value of the accounts receivable. We cannot, therefore, take those items into consideration. In our opinion the evidence fails to establish an excess of assets over liabilities in 1936. There remains for consideration only the question whether the stock may be said to have had some potential value until such time as the assets were transferred in satisfaction of the mortgage indebtedness. The petitioners contend that the fact that the entire plant and adjacent real estate remained intact in the hands of the corporation until 1937 indicates that the officers intended to reestablish the business and were merely disposing of assets not essential to the renewal of operations. We think that circumstances may be equally indicative of the absence of a market for the kind of property in question. It is true that Guy Wyman, the managing officer, was still hopeful in 1936 that the business might be revived. However, there is no showing of any facts which might justify such a hope, or from which we can find that the company during 1936, or even earlier, could reasonably have expected revival of its business, income or property values. Under such circumstances, *132 in the absence of some tangible plan for reorganization or refinancing, a mere hope of renewed activity at some indefinite future time is not, in our opinion sufficient to establish potential value for the stock. See ; , aff'd ; Cf. , aff'd . Moreover, it does not clearly appear that, by the close of 1936, even Guy Wyman retained such hope for renewal of the business as he may have previously had. In these respects the instant case is clearly distinguishable from the decision of the Circuit Court of Appeals for the Fifth Circuit in . In that case the taxpayer had proved that at the time in question a definite prospect existed for the reorganization of the affairs of the corporation there involved, Here, we have the facts that in 1936 Smith & Wyman Co. was clearly insolvent, and that it had then for at least *133 three years last passed been inactive except for efforts to liquidate its property. It had not paid a dividend since 1929. There is at most the very minimum of reason to find potential value in stock where no market value therein is claimed, where value of corporate assets must be relied upon, where the company had had no business or income for several years and where its property was worth less than its debts. We hold that the petitioners have failed to sustain the burden of proving that the stock in question was not worthless prior to 1937. It follows that they are not entitled to a loss deduction in 1937. Decision will be entered for the respondent.